BAILEY, Judge,
dissenting.
[45] I respectfully dissent, because cumulative error denied Wahl a fair trial. I am convinced that the alternate juror crossed a line in his persistent efforts to influence the duly-selected jurors. Even more egregious, Wahl’s Involuntary Manslaughter conviction was achieved by merging regulatory concepts into the definition of recklessness as set forth by our Legislature in the Criminal Code. Administrative code provisions, State’s Exhibit 65, were submitted as “evidence.”[3] The practical effect, however, was that the provisions were used to supplement the trial court’s instruction on the law and the jury was, in essence, invited to impose a form of strict criminal liability for a child care provider’s non-compliance with provisions of an administrative code. In light of the very tragic events, the jury complied.
*1162 [46] A criminal conviction absent proof beyond a reasonable doubt on each element of the charged crime amounts to fundamental error. In re Winship, 397 U.S. 358, 361, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The State charged that Wahl recklessly supervised A.D. and thereby violated Indiana Code Section 35 — 42—1—4(e), which at that time provided: “If: (1) a child care- provider recklessly supervises a child; and (2) the child dies as a result of the child care provider’s reckless supervision; the child care provider commits involuntary manslaughter, a Class D felony.” Indiana’s Criminal Code provides that one acts recklessly “if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct.” I.C. § 35-41-2-2(c).
[47] The theory of prosecution was that non-conformance with regulatory standards (one too many children or improper maintenance) is necessarily “a substantial deviation from acceptable standards of conduct” as an element of the charged crime. The State offered as an exhibit the language of Indiana Administrative Code Section 3-1.1-36.5 (setting forth the child to staff ratio and stating that children are to be supervised at all times) and asked Vicki Allen to explain or define “supervision” within the meaning of the regulatory provision. When asked “what does that mean,” she responded: “The children need to be within sight or sound at all times.” (Tr. 448.)
[48] Subsequently, in closing argument, the State invited the jurors to convict Wahl on this basis:
Twenty month old [A.D.] died on June 20, 2013 because of the reckless supervision of Saundra and Daniel Wahl. He was playing outside of the sight or hearing of Saundra Wahl when Saundra was supervising too many infants in addition to [A.D.]. And he and another child breeched the gate — this gate — that was maintained by Daniel Wahl, and he died in that gate.
(Tr. 675.) (emphasis added.)' In discussing the elements of the crime, the Prosecutor read the statutory definition of “recklessness” (including its reference to acceptable standards of conduct), and then supplemented the definition with reference to Allen’s testimony:
First, what were the acceptable standards of conduct? Well, Vicki Allen described what the minimum State standards were. You can exceed those standards, but that’s the minimum.... They would round up [child ages]. Their supervision they felt was good enough. The gate was good enough. Well, it’s not good enough. It’s not sufficient. And it wasn’t just in one area.... We know what the standards are for supervision. We have two of those. There’s in sight or hearing, and there’s the child-to-staff ratio. The Wahls didn’t meet either of those.
(Tr. 678-79.) (emphasis added.)
[49] In short, the State engrafted language from a regulatory scheme into the Criminal Code, such that “a substantial deviation from acceptable standards of conduct” became “a substantial deviation from child care provider standards.” This invaded the province of the jury whose duty it was to determine whether conduct was so substantial in its deviance that it amounted to criminal reckless conduct.
[50] The State should indeed insist upon high standards for child care providers. That said, it is perplexing that the Prosecution — and the State on appeal— appear satisfied that any failing to provide the best possible care amounts to criminal conduct. The State’s brief urges: ‘When it comes to the care of children in a for- *1163 profit day care facility, any deviation from the required regulations should be considered a substantial deviation from acceptable standards of conduct.” (State’s Br. at 10.) This may well be true in a civil context, but we are here concerned with a criminal substantial deviation from acceptable standards of conduct. It is also troubling that the State urges affirmance of a criminal conviction because of the “child-to-staff ratio” and “fail[ure] to insure that the child gate functioned properly and safely.” (State’s Br. at 10.) I feel compelled to observe that such “criminal” conduct was not specifically charged in the Involuntary Manslaughter charging information.
[51] In all conduct subject to regulation by this State, such as the operation of a business or profession, there is potential for negligence, gross negligence, or criminality. Individuals frequently fall short of the standards set by regulatory schemes. This can, and should, result in penalties such as warnings, revocation of licenses, fines, or other penalties of a civil nature. Egregious conduct can, and should, result in the bringing of criminal charges. However, in those situations, the conduct proscribed is that defined by our Legislature in the Criminal Code and the jury is the arbiter of community standards. A jury of one’s peers is entrusted with the determination of whether the accused acted in a manner that is so removed from acceptable community standards that he or she should be convicted of a felony and locked away from society.
[52] In my opinion, Wahl’s conviction was not a product of constitutionally adequate proceedings and amounts to fundamental error. Accordingly, I respectfully dissent.

. Pursuant to Indiana Evidence Rule 401, relevant evidence is that which "has any tendency to make a fact, more or less probable than it would be without the evidence, and the fact is of consequence in determining the action, (emphasis added.)